IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
_____

FAITH LAUGIER,

                                                                    INDEX NO.
                                                                    13cv6171 (JMF) (JCF)
                                                                    ECF CASE

                          PLAINTIFF,

            vs.                                                     SECOND
                                                                    AMENDED
THE CITY OF NEW YORK, a municipal entity,                           COMPLAINT
NEW YORK CITY POLICE OFFICER JOSE                                   [JURY TRIAL
VASQUEZMIRANDA, NEW YORK CITY POLICE                                DEMANDED]
SERGEANT DAVID STROM,
NEW YORK CITY POLICE OFFICER CHRISTOP
RINELLI, NEW YORK CITY POLICE SERGEANT
VINCENT GIAMBRONE,
NEW YORK CITY POLICE
OFFICER "JOHN DOE 10/1/11 INCIDENT
COMMANDER" NEW YORK CITY POLICE
OFFICER "JOHN DOE SHIELD NO. 7496",
NEW YORK CITY POLICE OFFICER JOHN DOE
11/17/11 INCIDENT COMMANDER", NEW YORK
CITY POLICE OFFICERS "OWS EVICTION
OFFICERS", and NEW YORK CITY POLICE
OFFICERS "JOHN DOES 1-20", and NEW YORK
CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO,
Defendant NEW YORK CITY POLICE CHIEF
THOMAS PURTELL, and Defendant NEW YORK CITY
POLICE OFFICER JOHN DOE 11/15/11 INCIDENT
COMMANDER,

                          DEFENDANTS.
_____


        Plaintiff FAITH LAUGIER, by her attorneys, STECKLOW COHEN &
THOMPSON, complaining of the defendants, respectfully alleges as follows:

## I. PRELIMINARY STATEMENT

        1.       Plaintiff FAITH LAUGIER brings this action for compensatory damages,

punitive damages and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988

for violations of her civil rights, as said rights are secured by these statutes and the Constitutions of the State of New York and the United States.

2. Justice Benjamin Cardozo wrote: "[F]reedom of thought, and speech... is the matrix, the indispensable condition, of nearly every other form of freedom." Palko v. Connecticut, 302 U.S. 319, 326-327 (1937). This is a case about a handful of events in a sustained campaign by the government of the City of New York to quash and destroy a movement by citizens who sought to use thought and speech to check rampant governmental and institutional abuse of power.

3. Plaintiff FAITH LAUGIER is a journalist who became involved in covering the Occupy Wall Street ("OWS") movement. OWS is a movement that, *inter alia*, protests the institutionalized inequality in this country that funnels almost all the nation's political power, wealth and resources to a tiny fraction of people and their corporations, and denies the vast majority of ordinary Americans their fair share. Plaintiff FAITH LAUGIER was arrested while covering OWS demonstrations on October 1, 2011. The Defendants herein deprived Plaintiff of many items of her personal belongings during an illegal and violent raid of Zuccotti Park on November 15, 2011. And just two days later, the Defendants herein again arrested Plaintiff while she was covering another OWS demonstration on November 17, 2011. Throughout these incidents Plaintiff FAITH LAUGIER was at all times lawfully exercising her First Amendment protected rights to freedom of speech, press and assembly. Nonetheless, The Defendant POLICE OFFICERS arrested, detained, and charged Plaintiff FAITH LAUGIER with crimes and violations that she did not commit. Plaintiff FAITH LAUGIER had to appear before the court on multiple occasions following her arrests. All charges from Plaintiff's October 1,

2011 unlawful arrest were dismissed on February 2, 2013. All charges from Plaintiff's

November 17, 2011 unlawful arrest were dismissed on March 22, 2013.

## II. JURISDICTION

4.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the

First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(a)(3) and (a)(4) and

the aforementioned statutory and constitutional provisions.

5.      Plaintiff FAITH LAUGIER further invokes this Court's supplemental

jurisdiction, pursuant to 28 USC. § 1367, over any and all State law claims and causes of

action.

## III. VENUE

6.      Venue is proper for the United States District Court for the Southern

District of New York, pursuant to 28 U.S.C. § 1391(b) because the claims arose in this

district.

## IV. JURY DEMAND

7.      Plaintiff FAITH LAUGIER respectfully demands a trial by jury of all

issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## V. THE PARTIES

8.      Plaintiff FAITH LAUGIER is a resident of the State of New York, City of

New York and the County of New York.

9.      Defendant THE CITY OF NEW YORK was and is a municipal

corporation duly organized and existing under and by virtue of the laws of the State of

New York.

10.    Defendant THE CITY OF NEW YORK maintains the New York City Police Department ("NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, City of New York.

11.    That at all times hereinafter mentioned, Defendant NEW YORK CITY POLICE OFFICER CHRISTOP RINELLI ("Defendant POLICE OFFICER RINELLI"), was a duly sworn police officer of the NYPD and was acting under the supervision of said department and according to his official duties. Upon information and belief, Defendant POLICE OFFICER RINELLI was Plaintiff's Arresting Officer on October 1, 2011. Plaintiff sues Defendant POLICE OFFICER RINELLI in both his official and individual capacities.

12.    That at all times hereinafter mentioned, Defendant NEW YORK CITY POLICE SERGEANT VINCENT GIAMBRONE ("Defendant POLICE SERGEANT GIAMBRONE") was a duly sworn police sergeant of the NYPD and was acting under the supervision of said department and according to his official duties. Upon information and belief, Defendant POLICE SERGEANT GIAMBRONE supervised and approved Defendant POLICE OFFICER RINELLI's arrest of the Plaintiff on October 1, 2011. Plaintiff sues Defendant POLICE SERGEANT GIAMBRONE in both his official and individual capacities.

13.    That at all times hereinafter mentioned, Defendant NEW YORK CITY POLICE OFFICER JOHN DOE 10/1/11 INCIDENT COMMANDER ("Defendant

POLICE OFFICER JOHN DOE 10/1/11 INCIDENT COMMANDER")  was a duly sworn police officer of the NYPD and was acting under the supervision of said department and according to his official duties. Plaintiff sues Defendant POLICE OFFICER JOHN DOE 10/1/11 INCIDENT COMMANDER in both his official and individual capacities. Plaintiff will seek leave to amend to name Defendant POLICE OFFICER JOHN DOE 10/1/11 INCIDENT COMMANDER once his or her actual identity is known to Plaintiff.

14.     That at all times hereinafter mentioned, Defendant NEW YORK CITY POLICE OFFICER JOHN DOE 11/15/11 INCIDENT COMMANDER ("Defendant POLICE OFFICER JOHN DOE 11/15/11 INCIDENT COMMANDER") was a duly sworn police officer of the NYPD and was acting under the supervision of said department and according to his official duties. Plaintiff sues Defendant POLICE OFFICER JOHN DOE 11/15/11 INCIDENT COMMANDER in both his official and individual capacities. Plaintiff will seek leave to amend to name Defendant POLICE OFFICER JOHN DOE 11/15/11 INCIDENT COMMANDER once his or her actual identity is known to Plaintiff.

15.     At all times hereinafter mentioned, Defendant NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO was the Chief of the Department for the New York City Police Department, which is an agency of the Defendant CITY OF NEW YORK.  Defendant NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO was a policymaker for the Defendant CITY OF NEW YORK and the New York City Police Department.  Upon information and belief, Defendant NEW YORK

CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO is currently the Commissioner, Office of Emergency Management, an agency of the City of New York.

16.     At all times hereinafter mentioned, Defendant NEW YORK CITY POLICE CHIEF THOMAS PURTELL was a policymaker for the Defendant CITY OF NEW YORK and the New York City Police Department.  Upon information and belief, Defendant NEW YORK CITY POLICE CHIEF THOMAS PURTELL is currently commander of the NYPD Organized Crime Division.

17.     Upon information and belief, Defendant NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO and Defendant NEW YORK CITY POLICE CHIEF THOMAS PURTELL were, jointly or severally, Defendant POLICE OFFICER JOHN DOE 10/1/11 INCIDENT COMMANDER.  Upon information and belief, both had command authority over most or all of the members of service and police units involved in the plaintiff's arrest.

18.     Upon information and belief, Defendant NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO and Defendant NEW YORK CITY POLICE CHIEF THOMAS PURTELL were, jointly or severally, Defendant NEW YORK CITY POLICE OFFICER JOHN DOE 11/15/11 INCIDENT COMMANDER.  Upon information and belief, both had command authority over most or all of the members of service and police units involved in the incident.

19.     That at all times hereinafter mentioned, each of the Defendant NEW YORK CITY POLICE OFFICERS "OWS EVICTION OFFICERS" ("the Defendant OWS EVICTION OFFICERS") were duly sworn police officers of the NYPD and were acting under the supervision of said department and according to their official duties. The

Defendant OWS EVICTION OFFICERS represent the as-yet identified members of the NYPD who unlawfully removed Plaintiff's personal belongings from Zuccotti Park on November 15, 2011. Plaintiff sues each of the Defendant OWS EVICTION OFFICERS in both their official and individual capacities. Plaintiff will seek leave to amend to name the Defendant OWS EVICTION OFFICERS once their actual identities are known to Plaintiff.

20.    That at all times hereinafter mentioned, Defendant NEW YORK CITY POLICE OFFICER JOSE VASQUEZMIRANDA ("Defendant POLICE OFFICER VASQUEZMIRANDA") was a duly sworn police officer of the NYPD and was acting under the supervision of said department and according to his official duties. Upon information and belief, Defendant POLICE OFFICER VASQUEZMIRANDA was Plaintiff's arresting officer for Plaintiff's November 17, 2011 arrest. Plaintiff sues Defendant POLICE OFFICER VASQUEZMIRANDA in both his official and individual capacities.

21.    That at all times hereinafter mentioned, Defendant NEW YORK CITY POLICE SERGEANT DAVID STROM ("Defendant POLICE SERGEANT STROM") was a duly sworn police officer of the NYPD and was acting under the supervision of said department and according to his official duties. Upon information and belief, Defendant POLICE SERGEANT STROM provided false information to Defendant POLICE OFFICER VASQUEZMIRANDA in order to create and support the baseless charges for Plaintiff's November 17, 2011 arrest. Plaintiff sues Defendant POLICE OFFICER STROM in both his official and individual capacities.

22.     That at all times hereinafter mentioned, Defendant NEW YORK CITY
POLICE OFFICER JOHN DOE SHIELD NO. 7496 ("Defendant POLICE OFFICER
JOHN DOE SHIELD NO. 7496") was a duly sworn police officer of the NYPD and was
acting under the supervision of said department and according to his official duties. Upon
information and belief, Defendant POLICE OFFICER JOHN DOE SHIELD NO. 7496
participated in the Plaintiff's arrest on November 17, 2011. Plaintiff sues Defendant
POLICE OFFICER SHIELD NO. 7496 in both his official and individual capacities.
Photographs depicting Defendant POLICE OFFICER JOHN DOE SHIELD NO. 7496
arresting the Plaintiff on November 17, 2011 are attached hereto as Exhibit A.  Plaintiff
will seek leave to amend to name Defendant POLICE OFFICER JOHN DOE SHIELD
NO. 7496 once his actual identity is known to Plaintiff.

23.     That at all times hereinafter mentioned, Defendant NEW YORK CITY
POLICE OFFICER JOHN DOE 11/17/11 INCIDENT COMMANDER ("Defendant
POLICE OFFICER JOHN DOE 11/17/11 INCIDENT COMMANDER") was a duly
sworn police officer of the NYPD and was acting under the supervision of said
department and according to his official duties. Plaintiff sues Defendant POLICE
OFFICER JOHN DOE 11/17/11 INCIDENT COMMANDER in both his official and
individual capacities. Plaintiff will seek leave to amend to name Defendant POLICE
OFFICER JOHN DOE 11/17/11 INCIDENT COMMANDER once his actual identity is
known to Plaintiff.

24.     That at all times hereafter mentioned, each of the Defendant NEW YORK
CITY POLICE OFFICERS JOHN DOES 1-20 ("the Defendant POLICE OFFICERS
JOHN DOES 1-20") were duly sworn police officers of the NYPD and were acting under

the supervision of said department and according to their official duties. The Defendant POLICE OFFICERS JOHN DOES 1-20 make up the as yet identified NYPD members of service who participated in and/or observed Plaintiff's arrests on October 1, 2011 and on November 17, 2011. Plaintiff sues each of the Defendant POLICE OFFICERS JOHN DOES 1-20 in both their official and individual capacities.   Plaintiff will seek leave to amend to name the Defendant POLICE OFFICERS JOHN DOES 1-20 once their actual identities are known to Plaintiff.

25.    Plaintiff FAITH LAUGIER will amend this complaint to name Defendant POLICE OFFICER JOHN DOE 10/1/11 INCIDENT COMMANDER, each of the Defendant OWS EVICTION OFFICERS, Defendant POLICE OFFICER JOHN DOE SHIELD NO. 7496, Defendant JOHN DOE 11/17/11 INCIDENT COMMANDER, and each of the Defendant POLICE OFFICERS JOHN DOES 1-20 as their identities can be established to a reasonable certainty.

26.    Hereinafter, the Defendants, both named and unnamed, may be referred to collectively at "the Defendant POLICE OFFICERS".

27.    At all times relevant to this action, the Defendant POLICE OFFICERS either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

28.    The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, with all of the actual and/or apparent authority attendant thereto.

29.     Each and all of the acts of the Defendant POLICE OFFICERS alleged herein were done by said defendants while acting within the scope and in furtherance of their employment by Defendant THE CITY OF NEW YORK.

## VI. FACTS COMMON TO ALL CLAIMS

30.     Occupy Wall Street (also referred to herein as "Occupy" and/or "OWS") is a popular political movement that seeks, among other things, to bring greater fairness to the way in which power and resources are shared among citizens of the United States.

31.     Occupy Wall Street consists of a large number of people nationwide who share a common consensus that American society is structured in a way that unfairly benefits the rich and powerful at the expense of ordinary people.

32.     Negative consequence of this structure include income inequality, poverty, mass imprisonment of citizens, offensive wars, environmental degradation, taxpayers paying for the mistakes of reckless corporations, and undue influence of corporations on government.

33.     Those involved with Occupy Wall Street share the belief that change is possible through peaceful protest.

34.     The Occupy Wall Street movement began to take action on September 17, 2011, by beginning a protest-occupation of Zuccotti Park, located in New York City's Wall Street financial district. Occupy Wall Street-related protests sprang up in many other cities throughout the United States, and the world.  A group of protestors remained at that location until November 15, 2011, when they were forcibly ejected during a 1AM police raid, accompanied by mass arrests of protestors and journalists.

35.     Plaintiff was a journalist who covered the Occupy Wall Street movement.

36.    The Plaintiff had a radio show on WBAI that covered politics and society, including coverage of events related to Occupy Wall Street.

37.    The Plaintiff also acted as a journalist by gathering facts, information and impressions for later use in written or radio commentary.

<u>THE DEFENDANT POLICE OFFICERS SUBJECTED PLAINTIFF TO
RETALIATORY FALSE ARREST ON OCTOBER 1, 2011</u>

38.    On the afternoon of October 1, 2011, Plaintiff was present in lower Manhattan for an OWS demonstration.

39.    Plaintiff, at all times, was lawfully exercising her First Amendment rights to free speech and peaceable assembly.

40.    This demonstration took place on and around The Brooklyn Bridge.

41.    Defendant POLICE OFFICER JOHN DOE 10/1/11 INCIDENT COMMANDER was the member of the NYPD who was the highest uniformed ranking police supervisor assuming command.

42.    As the Incident Commander of the Occupy Wall Street event on and around the Brooklyn Bridge on October 1, 2011, Defendant POLICE OFFICER JOHN DOE 10/1/11 INCIDENT COMMANDER was responsible for the overall management of the policing activities concerning the event.

43.    As the Incident Commander of the Occupy Wall Street event on and around the Brooklyn Bridge on October 1, 2011, Defendant POLICE OFFICER JOHN DOE 10/1/11 INCIDENT COMMANDER was responsible for the command, control, and coordination of all incident operations.

44.    The demonstration was proceeding across the Brooklyn Bridge, from the Manhattan side to the Brooklyn side.

45.     The demonstrators were being directed by the police to cross the bridge using the pedestrian roadway.

46.     However, the police began to direct another part of the group to cross the bridge by entering the eastbound traffic lanes.

47.     A group of members of service, including Defendant NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO and Defendant NEW YORK CITY POLICE CHIEF THOMAS PURTELL walked onto the eastbound traffic lane.  Upon information and belief, Defendant NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO and Defendant NEW YORK CITY POLICE CHIEF THOMAS PURTELL were in command of the other members of service, including a Lt. Gannon, who were part of that group.  Upon information and belief Defendant NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO and Defendant NEW YORK CITY POLICE CHIEF THOMAS PURTELL directed the activities of that group of members of service, as well as of other members of service nearby, in their performance of the acts and omissions that caused the plaintiff's losses and injuries herein.

48.     A group of protestors followed this group of members of service.

49.     Upon information and belief, the protestors that followed the group of members of service which included Defendant NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO and Defendant NEW YORK CITY POLICE CHIEF THOMAS PURTELL believed that this group of officers was leading the protestors for the purpose of allowing these protestors to use the eastbound traffic lane of the bridge for their march.

50.     Upon information and belief, Defendant NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO and Defendant NEW YORK CITY POLICE CHIEF THOMAS PURTELL knew or should have known that the protestors following them believed that they were being led onto -- and allowed to use -- the eastbound roadway by this group of members of service.

51.     Plaintiff followed this latter part of the group, under police direction, onto the Brooklyn Bridge's eastbound traffic lanes.

52.     Plaintiff walked within close proximity of NYPD officers, who did not provide any instruction that the Plaintiff should not proceed.

53.     Plaintiff, at all times, and to the degree that the Defendant POLICE OFFICERS' "John Does 1-10" directives were audible, complied with those directives as best as possible.

54.     When the Plaintiff and the group had been led by police approximately half-way across the span, the police ordered the demonstrators to stop.

55.     The demonstrators, including the Plaintiff, complied.

56.     The Police then informed those who were on the span that they would be arrested.

57.     The Defendant POLICE OFFICERS "John Does 1-10" arrested Plaintiff at or around 5:00pm.

58.     The Defendant POLICE OFFICERS "John Does 1-10" placed Plaintiff onto a bus with other arrestees and held Plaintiff there for approximately forty (40) minutes.

59.    The Defendant POLICE OFFICERS "John Does 1-10" transported Plaintiff to two separate NYPD precincts, over a period of several hours.

60.    The Defendant POLICE OFFICERS "John Does 1-10" charged Plaintiff with disorderly conduct.

61.    Plaintiff did not commit any violation or crime.

62.    The Defendant POLICE OFFICERS did not release Plaintiff from their custody until approximately 5:00 am the next day, October 2, 2011.

63.    Defendant POLICE OFFICER RINELLI swore out a false criminal complaint (the "10/1 Complaint") against the Plaintiff.

64.    In the 10/1 Complaint, Defendant POLICE OFFICER RINELLI falsely alleged that he observed Plaintiff intentionally obstructing vehicular traffic within a group of approximately Seven Hundred (700) persons.

65.    All of these persons had in fact been led onto the Brooklyn Bridge roadway by New York City Police officers, who then proceeded to arrest them without lawful basis.

66.    The particular arrest of the Plaintiff was approved by Defendant POLICE SERGEANT GIAMBRONE.

67.    Plaintiff was forced to appear before the Court on multiple occasions to answer the baseless charges set forth in the 10/1 Complaint.

68.    All charges against Plaintiff stemming from the October 1, 2011 arrest of Plaintiff were dismissed on February 6, 2013.

<u>THE DEFENDANT POLICE OFFICERS UNLAWFULLY REMOVED<br>PLAINTIFF'S PROPERTY FROM ZUCCOTTI PARK ON NOVEMBER 15, 2011</u>

69.     Occupy Wall Street began to take action on September 17, 2011, thereby beginning the movement's "Occupation" of Zuccotti Park ("the Park").

70.     OWS demonstrators utilized Zuccotti Park in support of their efforts to call attention to their cause, creating an encampment in the Park.

71.     Zuccotti was at all times a privately owned public space.

72.     Plaintiff, as part of her work as a journalist, documented and observed OWS' occupation of the park.

73.     In the early morning hours of November 15, 2011, Plaintiff had personal possession within the Park.

74.     At or around 1:00am on November 15, 2011, several members of the NYPD, including but not limited to the Defendant OWS EVICTION OFFICERS, arrived at the Park and began removing all property from the Park.

75.     At or around this time, Plaintiff arrived outside of the Park, as she heard that the NYPD had raided the Park.

76.     Plaintiff spoke with members of the NYPD, including but not limited to the Defendant OWS EVICTION OFFICERS, requesting that they allow her to enter the Park to remove her personal belongings.

77.     The Defendant OWS EVICTION OFFICERS and other members of the NYPD did not allow Plaintiff to enter the Park.

78.     The Defendant OWS EVICTION OFFICERS and other members of the NYPD excluded journalists, including Plaintiff, from viewing range of the officers' illegal raid of the Park.

79. Plaintiff's property was removed by members of the NYPD, including but not limited to the Defendant OWS EVICTION OFFICERS.

80. Upon information and belief, Defendant NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO and Defendant NEW YORK CITY POLICE CHIEF THOMAS PURTELL were Incident Commander(s) at Zuccotti Park at the time of the incidents described herein.  Upon information and belief, Defendant NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO and Defendant NEW YORK CITY POLICE CHIEF THOMAS PURTELL were in command of the other members of service who were on duty at that time and place.  Upon information and belief Defendant NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO and Defendant NEW YORK CITY POLICE CHIEF THOMAS PURTELL directed the activities of those members of service, in their performance of the acts and omissions that caused the plaintiff's losses and injuries herein.

81. Plaintiff went to the City of New York's Department of Sanitation's ("DSNY") garage in hopes of retrieving her personal belongings.

82. Plaintiff was not able to re-collect her personal belongings.

83. Defendants, to date, have not returned Plaintiff's personal belongings, nor have they, in any way, compensated her for her loss.

<u>THE DEFENDANT POLICE OFFICERS SUBJECTED PLAINTIFF TO<br>RETALIATORY FALSE ARREST ON NOVEMBER 17, 2011</u>

84. On November 17, 2011, at or around 10:15 AM, Plaintiff was present at the corner of William Street and Beaver Street in Manhattan.

85. Plaintiff was present in order to observe an OWS demonstration.

86. Plaintiff was present in her capacity as a journalist.

87.     At that time and place, the police blocked the forward progress of the peaceable demonstration that the Plaintiff was covering as a journalist.

88.     The police did not inform those in the rear of the demonstration that progress forward was blocked.  As a result, the demonstration continued to move forward.  Those at the front of the demonstration were blocked by the police who stopped the progress of the march in front of them, and by the unknowing rear of the demonstration behind them.

89.     Plaintiff was at or near the front of the demonstration.

90.     Plaintiff was on the sidewalk.

91.     Plaintiff was told by an officer to move back.

92.     The Plaintiff complied.  To do so, she turned and walked away from the police line, taking the only available pathway to disperse.

93.     While the Plaintiff was moving to disperse, she was tackled from behind without warning by the Defendant POLICE OFFICERS "John Does 11-20."

94.     The Plaintiff had no idea that the people that threw and pinned her to the ground were police.

95.     One of the Defendant POLICE OFFICERS "John Does 11-20" knelt on the Plaintiff's back.

96.     The officer used plastic flexicuffs, and secured Plaintiff's hands so tightly that the Plaintiff's hands turned blue.

97.     As the Plaintiff was being attacked by the Defendant POLICE OFFICERS "John Does 11-20", her journalist colleague repeatedly told the Defendant POLICE OFFICERS "John Does 11-20", "She's a journalist."

98.    The Defendant POLICE OFFICERS "John Does 11-20" proceeded with the arrest anyway.

99.    The Defendant POLICE OFFICERS "John Does 11-20" picked the Plaintiff up and carried her to a police van, without giving the Plaintiff the opportunity to stand and walk on her own.

100.    The Defendant POLICE OFFICERS "John Does 11-20" then dropped the Plaintiff on the ground.

101.    The Defendant POLICE OFFICERS "John Does 11-20" picked up the Plaintiff a second time and then dropped or threw her down in the street.

102.    The Defendant POLICE OFFICERS "John Does 11-20" picked up the Plaintiff again and forcefully threw her against a wall.

103.    The Defendant POLICE OFFICERS "John Does 11-20" put Plaintiff in a police van.

104.    The Plaintiff was taken to an outdoor police facility for processing.

105.    The Defendant POLICE OFFICERS "John Does 11-20" were unable to remove the flexicuffs, because they were so tightly applied.  It was impossible to insert scissors between the Plaintiff's skin and the cuffs, to cut them.  Eventually, the Defendant POLICE OFFICERS "John Does 11-20" were able to remove the cuffs using a knife-like utensil.

106.    The Defendant POLICE OFFICERS "John Does 11-20" charged Plaintiff with violating P.L. §§ 240.20(5) and (6), Disorderly Conduct.

107.    The Defendant POLICE OFFICERS "John Does 11-20" charged Plaintiff with violating PL 205.30, resisting arrest, which is a Class A misdemeanor.

108.    Defendant POLICE OFFICER VASQUEZMIRANDA swore out a false criminal complaint (the "11/17 Complaint") against the Plaintiff.

109.    Defendant POLICE OFFICER VASQUEZMIRANDA swore portions of the 11/17 Complaint on the basis of information allegedly given to him by Defendant POLICE SERGEANT STROM.

110.    The 11/17 Complaint stated that the Plaintiff "intentionally attempted to prevent a police officer ... from effecting an authorized arrest" of herself.

111.    The accusation was false.

112.    The 11/17 Complaint stated that when Defendant POLICE SERGEANT STROM was placing the Plaintiff under arrest, she "flailed her arms, making arrest difficult."

113.    This accusation was false.

114.    The Plaintiff was thrown face-first on the ground from behind, and was immediately tackled.  The Plaintiff had no opportunity to -- and did not "flail" her arms.

115.    The 11/17 Complaint stated that Defendant POLICE SERGEANT STROM "observed [the Plaintiff] obstructing vehicular traffic by standing in the street with more than 100 other people."

116.    This accusation was false.

117.    The 11/17 Complaint stated that the Plaintiff "refused to comply with a lawful order to disperse."

118.    This accusation was false.

119.    Nonetheless, Plaintiff was forced to appear before the Court to answer the Defendant POLICE OFFICERS' "John Does 11-20", Defendant POLICE OFFICER

VASQUEZMIRANDA's and Defendant POLICE SERGEANT STROM's baseless charges.

120.    All charges against Plaintiff the Defendant POLICE OFFICERS November 17, 2011 arrest of Plaintiff were dismissed on March 22, 2013.

<u>VII. GENERAL CONSTITUTIONAL CLAIM FOR RELIEF</u>

<u>DEPRIVATION OF PLAINTIFF'S FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. § 1983</u>

121.    Plaintiff re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

122.    All of the aforementioned acts of Defendant THE CITY OF NEW YORK, Defendant POLICE OFFICER RINELLI, Defendant POLICE SERGEANT GIAMBRONE, Defendant POLICE OFFICER VASQUEZMIRANDA, Defendant POLICE SERGEANT STROM, each of the Defendant OWS EVICTION OFFICERS, and each of the Defendant POLICE OFFICERS "John Does 1-20" and their agents, servants and employees ("Defendants"), were carried out under the color of state law.

123.    All of the foregoing acts by Defendants deprived Plaintiff of federally protected rights, including, but not limited to, the right:

    a.   Not to be deprived of liberty without due process of law;

    b.   To be free from seizure and arrest not based upon probable cause;

    c.   To freedom from being subjected to false criminal charges by the police;

    d.   To freedom from excessive force being used upon them;

    e.   To freedom from retaliatory prosecution;

    f.   To freedom from abuse of process;

g.   To freedom of speech and expression.

124.   All of the aforementioned acts deprived Plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

125.   The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, under color of law, with all of the actual and/or apparent authority attendant thereto.

126.   The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of Defendant THE CITY OF NEW YORK and the NYPD, all under the supervision of ranking officers of said department.

127.   As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of her civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of property, damage to property, loss of wages, out-of-pocket expenses and damage to her reputation and standing within her community.

128.   Accordingly, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

## VIII. CLAIMS FOR RELIEF RELATED TO DEFENDANTS' OCTOBER 1, 2011 UNLAWFUL ARREST OF PLAINTIFF

_____

## CLAIM FOR RELIEF VIII. A

## FALSE ARREST UNDER 42 U.S.C. § 1983

129.    Plaintiff re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

130.    Plaintiff was subjected to false arrest by the Defendant POLICE OFFICER RINELLI and Defendant POLICE OFFICERS "John Does 1-10" on October 1, 2011.

131.    Plaintiff's false arrest on October 1, 2011 was ratified and approved by Defendant POLICE SERGEANT GIAMBRONE.

132.    Probable cause did not exist to arrest the Plaintiff on October 1, 2011.

133.    As a result, Plaintiff's liberty was restricted for an extended period of time, Plaintiff was put in fear for her safety, and Plaintiff was caused to suffer embarrassment and humiliation, without probable cause.

134.    As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of her civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of property, damage to property, loss of wages, out-of-pocket expenses and damage to her reputation and standing within her community.

135.    Accordingly, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

<u>CLAIM FOR RELIEF VIII. B</u>

<u>FAILURE TO INTERVENE UNDER 42 U.S.C. §1983</u>

136.    Plaintiff re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

137.    Throughout Plaintiff's October 1, 2011 arrest by Defendant POLICE OFFICER RINELLI and the Defendant POLICE OFFICERS "John Does 1-10", each of

the individual Defendant POLICE OFFICERS "John Does 1-10" had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of her constitutional rights.

138.    Defendant POLICE OFFICER RINELLI and the Defendant POLICE OFFICERS "John Does 1-10" each failed to intervene on Plaintiff's behalf to prevent the violation of her constitutional rights despite having had realistic opportunities to do so.

139.    Defendant POLICE OFFICER RINELLI and the Defendant POLICE OFFICERS "John Does 1-10" each failed to intervene on Plaintiff's behalf to prevent the violation of her constitutional rights despite having substantially contributed to the circumstances within which Plaintiff's rights were violated by their affirmative conduct.

140.    As a result of the aforementioned conduct of Defendant POLICE OFFICER RINELLI and the Defendant POLICE OFFICERS "John Does 1-10," Plaintiff's constitutional rights were violated.

141.    As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of her civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, out-of-pocket expenses and damage to her reputation and standing within her community.

142.    Accordingly, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

CLAIM FOR RELIEF NUMBER VIII. C

MALICIOUS PROSECUTION UNDER 42 U.S.C. §1983

143.    Defendant POLICE OFFICER RINELLI, Defendant POLICE SERGEANT GIAMBRONE, and Defendant POLICE OFFICERS "John Does 1-10" caused criminal proceedings to be brought against Plaintiff after unlawfully arresting her on October 1, 2011.

144.     The criminal proceedings that Defendant POLICE OFFICER RINELLI, Defendant POLICE SERGEANT GIAMBRONE, and Defendant POLICE OFFICERS "John Does 1-10" brought against Plaintiff were terminated in her favor with the complete dismissal of all charges against her.

145.     There was no probable cause to initiate or continue these proceedings.

146.     Defendant POLICE OFFICER RINELLI, Defendant POLICE SERGEANT GIAMBRONE, and Defendant POLICE OFFICERS "John Does 1-10" acted maliciously in initiating these proceedings.

147.     Plaintiff was forced to appear before the court on multiple occasions in order to answer the criminal proceedings that Defendant POLICE OFFICER RINELLI, Defendant POLICE SERGEANT GIAMBRONE, and Defendant POLICE OFFICERS "John Does 1-10" maliciously caused to be brought against her.

148.     Plaintiff was repeatedly and continually deprived of her liberty as a result.

149.     As a result of the foregoing, Plaintiff sustained, *inter alia*, physical injuries, physical pain, mental injuries, emotional distress, embarrassment, humiliation, out of pocket expenses, loss of liberty, loss of standing within her community, and deprivation of her constitutional rights.

150.     Accordingly, Plaintiff seeks compensation in an amount to be determined at trial.

<u>CLAIM FOR RELIEF NUMBER VIII. D</u>
<u>EXCESSIVE FORCE UNDER 42 U.S.C. § 1983</u>

151.     Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

152.    On October 1, 2011, Defendant POLICE OFFICER RINELLI and the

Defendant POLICE OFFICERS "John Does 1-10" used excessive force against Plaintiff

by handcuffing her without probable cause for her arrest.

153.    At no point did the circumstances presented to Defendant POLICE

OFFICER RINELLI and the Defendant POLICE OFFICERS "John Does 1-10" support

the above-mentioned applications of force on Plaintiff.

154.    Plaintiff was subjected to excessive force in violation of her rights as

guaranteed under the United States Constitution and the Civil Rights Act of 1871, 42

U.S.C. Section 1983.

155.    As a result of the above constitutionally impermissible conduct, Plaintiff

was caused to suffer personal injuries, violation of her civil rights, emotional distress,

anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, out-of-pocket

expenses, and damage to her reputation and standing within her community.

156.    As a result of Defendants' impermissible conduct, Plaintiff demands

judgment against Defendants in a sum of money to be determined at trial.

<u>CLAIM FOR RELIEF VIII. E</u>

<u>RETALIATION FOR FIRST AMENDMENT PROTECTED EXPRESSION
UNDER 42 U.S.C. § 1983</u>

157.    Plaintiff repeats, reiterates, and re-alleges each and every allegation

contained in the above paragraphs with the same force and effect as if fully set forth

herein.

158.    On October 1, 2011, Defendant POLICE OFFICER RINELLI, Defendant

POLICE SERGEANT GIAMBRONE, and Defendant POLICE OFFICERS "John Does

1-10" retaliated against Plaintiff for engaging in First Amendment protected expression,

to wit, participating in and covering an Occupy Wall Street event for a news venue, WBAI.

159.    Plaintiff was not engaged in any illegal activity.

160.    Nevertheless, Plaintiff was arrested and subjected to excessive force for engaging in peaceful assembly, expressive speech and association, as well as journalistic activities.

161.    The actions of Defendant POLICE OFFICER RINELLI, Defendant POLICE SERGEANT GIAMBRONE, and Defendant POLICE OFFICERS "John Does 1-10" heretofore described, were designed to and did cause bodily harm, pain and suffering in direct retaliation for Plaintiff's exercise of her civil and constitutional rights of free speech, free expression and expressive association as guaranteed by the First and Fourteenth Amendments to the United States Constitution as well as the Constitution of the State of New York.

162.    As a result of the foregoing, Plaintiff is entitled to compensatory damages and punitive damages against the Defendants in amounts to be determined at trial.

163.    As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

### IX. CLAIMS FOR RELIEF FROM DEFENDANTS' NOVEMBER 15, 2011 SEIZURE OF PLAINTIFF'S BELONGINGS

---

### CLAIM FOR RELIEF NUMBER IX. A

### VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES

164.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

165.    The Defendant OWS EVICTION OFFICERS' seizure of Plaintiff's personal belongings constitutes an unreasonable seizure in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. §1983.

166.    The Defendant OWS EVICTION OFFICERS' failure to return Plaintiff's personal belongings constitutes an unreasonable seizure in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. §1983.

167.    The Defendant OWS EVICTION OFFICERS undertook these actions pursuant to a policy, custom, and/or practice of the NYPD, and the decision to take such actions was made by high-ranking officials of Defendant THE CITY OF NEW YORK.

168.    The Defendant OWS EVICTION OFFICERS deprived Plaintiff of the use and enjoyment of many items her personal belongings.

169.    As a result of these actions, Plaintiff was damaged in an amount to be determined at trial.

<u>CLAIM FOR RELIEF IX. B</u>

<u>FAILURE TO INTERVENE UNDER 42 U.S.C. §1983</u>

170.    Plaintiff re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

171.    Throughout the Defendant OWS EVICTION OFFICERS' invasion of Zuccotti Park, each of the individual Defendant OWS EVICTION OFFICERS had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of her constitutional rights.

172.    Each of the individual Defendant OWS EVICTION OFFICERS failed to intervene on Plaintiff's behalf to prevent the violation of her constitutional rights despite having had realistic opportunities to do so.

173.    Each of the individual Defendant OWS EVICTION OFFICERS failed to intervene on Plaintiff's behalf to prevent the violation of her constitutional rights despite having substantially contributed to the circumstances within which Plaintiff's rights were violated by their affirmative conduct.

174.    As a result, Plaintiff's constitutional rights were violated.

175.    As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of her civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, out-of-pocket expenses and damage to her reputation and standing within her community.

176.    As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

## X. CLAIMS FOR RELIEF RELATED TO DEFENDANTS' NOVEMBER 17, 2011 UNLAWFUL ARREST OF PLAINTIFF

_____

### CLAIM FOR RELIEF X. A

### FALSE ARREST UNDER 42 U.S.C. § 1983

177.    Plaintiff re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

178.    Defendant POLICE OFFICER VASQUEZMIRANDA, Defendant POLICE SERGEANT STROM, and the Defendant POLICE OFFICERS "John Does 11-20" subjected Plaintiff to false arrest on November 17, 2011.

179.    Plaintiff's liberty was restricted for an extended period of time, Plaintiff was put in fear for her safety, and Plaintiff was caused to suffer embarrassment and humiliation, without probable cause.

180.    As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of her civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of property, damage to property, loss of wages, out-of-pocket expenses and damage to her reputation and standing within her community.

181.    Plaintiff demands judgment against Defendants POLICE OFFICER VASQUEZMIRANDA, Defendant POLICE SERGEANT STROM, and the Defendant POLICE OFFICERS "John Does 11-20" in a sum of money to be determined at trial.

<u>CLAIM FOR RELIEF X. B</u>

<u>FAILURE TO INTERVENE UNDER 42 U.S.C. §1983</u>

182.    Plaintiff re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

183.    Throughout Plaintiff's arrest by Defendant POLICE OFFICER VASQUEZMIRANDA, Defendant POLICE SERGEANT STROM, and the Defendant POLICE OFFICERS "John Does 11-20", each of the individual Defendants had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of her constitutional rights.

184.    Defendant POLICE OFFICER VASQUEZMIRANDA, Defendant POLICE SERGEANT STROM, and each of the individual Defendant POLICE

OFFICERS "John Does 11-20" failed to intervene on Plaintiff's behalf to prevent the violation of her constitutional rights despite having had realistic opportunities to do so.

185.     Defendant POLICE OFFICER VASQUEZMIRANDA, Defendant POLICE SERGEANT STROM, and each of the individual Defendant POLICE OFFICERS "John Does 11-20" failed to intervene on Plaintiff's behalf to prevent the violation of her constitutional rights despite having substantially contributed to the circumstances within which Plaintiff's rights were violated by their affirmative conduct.

186.     As a result of the aforementioned conduct of Defendant POLICE OFFICER VASQUEZMIRANDA, Defendant POLICE SERGEANT STROM, and each of the individual Defendant POLICE OFFICERS "John Does 11-20", Plaintiff's constitutional rights were violated.

187.     As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of her civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, out-of-pocket expenses and damage to her reputation and standing within her community.

188.     As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

CLAIM FOR RELIEF X. C

EXCESSIVE FORCE UNDER 42 U.S.C. § 1983

189.     Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

190.    On November 17, 2011, individually and collectively, Defendant POLICE OFFICER VASQUEZMIRANDA, Defendant POLICE SERGEANT STROM, and some or all of the Defendant POLICE OFFICERS "John Does 11-20" used excessive force against Plaintiff in tackling her from behind and without warning.

191.    On November 17, 2011, individually and collectively, Defendant POLICE OFFICER VASQUEZMIRANDA, Defendant POLICE SERGEANT STROM, and some or all of the Defendant POLICE OFFICERS "John Does 11-20" used excessive force against Plaintiff in slamming and pinning her against the pavement.

192.    On November 17, 2011, individually and collectively, Defendant POLICE OFFICER VASQUEZMIRANDA, Defendant POLICE SERGEANT STROM, and each of the Defendant POLICE OFFICERS "John Does 11-20" used excessive force against Plaintiff in applying plastic flex-cuffs around her wrists without probable cause for her arrest, and so tightly that her hands turned blue.

193.    At no point during the above-mentioned actions did the circumstances presented to the Defendants support any of the above-mentioned applications of force on Plaintiff.

194.    Plaintiff was subjected to excessive force in violation of her rights as guaranteed under the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

195.    As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of her civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, out-of-pocket expenses, and damage to her reputation and standing within her community.

196.    As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

CLAIM FOR RELIEF X. D

RETALIATION FOR FIRST AMENDMENT PROTECTED EXPRESSION
UNDER 42 U.S.C. § 1983

197.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

198.    On November 17, 2011, Defendant POLICE OFFICER VASQUEZMIRANDA, Defendant POLICE SERGEANT STROM, and each of the Defendant POLICE OFFICERS "John Does 11-20" retaliated against Plaintiff for engaging in First Amendment protected expression, to wit, and covering an Occupy Wall Street event for a news venue, WBAI.

199.    Plaintiff was not engaged in any illegal activity.

200.    Nevertheless, Plaintiff was arrested and subjected to excessive force for engaging in journalistic activities.

201.    The actins of Defendant POLICE OFFICER VASQUEZMIRANDA, Defendant POLICE SERGEANT STROM, and each of the Defendant POLICE OFFICERS "John Does 11-20" heretofore described, were designed to and did cause bodily harm, and pain and suffering in direct retaliation for Plaintiff's exercise of her civil and constitutional rights of free speech, free expression and expressive association as guaranteed by the First and Fourteenth Amendments to the United States Constitution as well as the Constitution of the State of New York.

202.    As a result of the foregoing, Plaintiff is entitled to compensatory damages and punitive damages against the Defendants in amounts to be determined at trial.

203.    As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of her civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, out-of-pocket expenses, and damage to her reputation and standing within her community.

204.    As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

XI.   MUNICIPAL LIABILITY UNDER *MONELL* RELATING TO EACH OF DEFENDANTS' INTERACTIONS WITH PLAINTIFF AND ARISING FROM DEFENDANTS' UNCONSTITUTIONAL POLICIES AND CUSTOMS UNDER 42 U.S.C. § 1983

205.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

206.    Defendants harassed, battered, berated, and caused Plaintiff to suffer injuries in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that their conduct would jeopardize Plaintiff's liberty, well-being, safety and constitutional rights.

207.    The acts complained of were carried out by the aforementioned individual Defendant POLICE OFFICERS in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

208.    The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials pursuant to the customs,

policies, usages, practices, procedures, and rules of Defendant THE CITY OF NEW

YORK and the NYPD, all under the supervision of ranking officers of said department.

209.    The aforementioned customs, policies, usages, practices, procedures and

rules of Defendant THE CITY OF NEW YORK and the NYPD include, but are not

limited to, the following unconstitutional practices:

<u>A) WRONGFULLY TARGETING PARTICIPANTS IN OCCUPY WALL STREET
ACTIVITIES WITHOUT CAUSE FOR ARREST, DETENTION, OR
PROSECUTION;</u>

210.    According to *The New York Times*, as of June 18, 2012, over 2,500

participants in Occupy Wall Street activities had been arrested in Manhattan alone.  Upon

information and belief, the vast majority of the cases were dismissed or otherwise

resolved without criminal penalty.

211.    In other words, over the period of less than a year, Defendant THE CITY

OF NEW YORK caused hundreds or thousands of protestors — who had committed no

crime — to be arrested.

212.    Upon information and belief, the NYPD's response to the Occupy

movement follows mass arrest policies that were established at the time of the 2004

Republican convention, during which over 1,800 people were arrested, with more than 90

percent of the arrest cases being dismissed or ending with not-guilty verdicts.

213.    Upon information and belief, the police have been documented to have

filed false criminal charges against OWS participants who were arrested during a January

1, 2012 Occupy Wall Street march.

214.    Upon information and belief, in one such arrest Alexander Arbuckle was

arrested on charges that he was standing in the street blocking traffic.  The arresting

officer, Officer Elisheba Vera, swore to this version of events on the witness stand at

trial.  However, photo and video evidence – including video taken by the NYPD's video unit – demonstrated that Arbuckle was on the sidewalk when he was arrested.  As the magazine *The Nation* reported: "As it turns out, Officer Elisheba Vera lied to the court." Arbuckle was found not guilty.

215.    Upon information and belief, Damien Treffs was a legal observer accompanying a January 1, 2012 march.  He was violently arrested without warning.  The District Attorneys office declined to prosecute the case because probable cause was lacking for the arrest.

216.    Upon information and belief, police officers committed perjury in order to press charges against another protestor, Jessica Hall, who was arrested for blocking street traffic on November 17, 2011, the same day as the Defendant POLICE OFFICERS arrested Plaintiff.  As *The Nation* reported, the truth exposed at her trial was quite different:  "During trial, Sergeant Michael Soldo told the court that he arrested Hall because she was blocking traffic.  But Soldo later admitted under cross-examination, and the NYPD's own video confirmed, that it was the NYPD metal barricades that prevented vehicles from passing."

217.    Upon information and belief, police lied to support the arrest of a protestor arrested at an Occupy-related protest on September 19, 2011, The protestor was arrested for – according to former NYPD spokesman Paul Browne – leaping over a police crowd-control barrier.  Video of the incident, however, showed that the arresting officers reached across the barrier and forcibly dragged the individual over it.

218.    Upon information and belief, Defendant THE CITY OF NEW YORK tacitly condones its police officers' continuing and widespread practice of undertaking

extraordinary and unjustified uses of force against persons engaged in the practice of exercising their First Amendment Protected rights to free speech and association.

219.    Upon information and belief, Defendant THE CITY OF NEW YORK tacitly condones its police officers' continuing and widespread practice of undertaking extraordinary and unjustified uses of force against person specifically engaged in the practice of exercising their First Amendment Protected rights to free speech and association while participating in or observing assemblies, marches, and events related to Occupy Wall Street.

220.    In January 2012, the concentrated and collaborative efforts of seven law school clinics throughout the United States founded the *Protests and Assembly Rights Project* in order to "Investigate… the United States' response to Occupy Wall Street in light of the government's international legal obligations."

221.    These same concentrated and collaborative efforts helped the *Protests and Assembly Rights Project* draft and thereafter, in July of 2012, publish, "Suppressing Protest: Human Rights Violations In The U.S. Response To Occupy Wall Street" ("The Report"); wherein, the authors state, "In many instances, the… [NYPD] have responded aggressively to nonviolent protests, and have escalated situations —— through arbitrary or misapplications of the law, an excessive police presence, or the use of unwarranted force. The police response has thus . . . undermined basic assembly and expression freedoms [and] [a]t times . . . presented a threat to the safety of New Yorkers."

222.    In efforts to explain and/or identify the source of the NYPD's "aggressive responses to nonviolent protests", The Report calls attention to the fact that, "in recent years, New York City has witnessed a shift from 'reactive' policing to 'proactive'

policing under Commissioner Raymond Kelly's 'Safe Streets, Safe City' initiative....
[meaning] that police adopt measures in advance to minimize the potential impact and
size of a protest, which might include preparing a large police force to arrive at a
scheduled protest location before the event begins, or regulating permits for the protest in
a manner designed to redirect the protest."

223.    Despite the positive implications in the title of Commissioner Kelly's
'Safe Streets, Safe City' initiative, this 'proactive' form of policing has failed to keep
OWS protesters, observers, and bystanders alike safer, but instead, has led to repeated
and continuing acts of police officers committing "clear violations of the government's
obligation to uphold assembly and expression rights.... [amounting together to] protest
suppression[.]"

224.    Further, The Report cites several instances of "Overpolicing and Poor
Communication" conducted by the NYPD, where generally "[a]t times, the number of
officers on hand [at OWS assemblies, marches, and events] has rivaled or even exceeded
the number of protestors . . . repeatedly, the number of visible police [has been]
manifestly excessive in comparison to both the peaceful nature of the assembly and the
number in attendance at the protests." to wit; "[o]casionally, officers in visibly
threatening "hard" uniform (e.g.. body padding, helmets, shields) have attended protests,
including small protests posing no evident threat."

225.    Witnesses have observed NYPD officers who have been assigned to
perform crowd control duties and overall help provide for individuals' safety instead
strike, beat, and otherwise berate civilians without reason, without notice, and without
consequence; to wit, "One protestor . . . reported being punched in the left temple by an

officer, without any apparent provocation or notice [and thereafter] [t]he punch led to swelling, bleeding, bruising, dizzy spells, and nausea [which required] the individual [to seek] emergency medical treatment[,]" further, "[one legal observer who was also a retired New York Supreme Court judge] . . . witnessed an officer throw a woman to the ground 'out of nowhere' and hit her in the head[,]" and still further, "[one video from an OWS event] shows that an officer approached a woman from behind and grabbed her by the strap of her backpack and her scarf for no apparent reason[;] the officer [then] began to pull the woman towards him . . . for approximately fifteen seconds, and appeared to possibly be choking her via the strap of her scarf [and after this incident] the police appeared not to take any action [against the officer]."

226.    The Report posits how, following incidents of police brutality such as these, the conduct of the NYPD in response to OWS assemblies, marches, and events has and continues to cause "[p]rotestors [to] reasonably perceive that they cannot safely protest [and thus remain] constantly on guard for potential arbitrary police force, or decide to leave the assembly[,]"; and as a result OWS participants, observers, and bystanders and civilians generally "view a[n] NYPD officer as someone who can take out [his] baton and beat [an individual] and face no repercussion."

227.    Or further, stated differently by a graduate student who had attended multiple OWS events before and leading up to The Report's publication, "'It's a shock when you expect police to protect you, but you see them beat people . . . [I] grew up thinking that the cops are 'the good guys' but . . . when you see them beat people for no reason, it changes your world. You don't feel safe."

228.    Upon information and belief, Defendant THE CITY OF NEW YORK tacitly condones its police officers' continuing and widespread practice of undertaking extraordinary and unjustified uses of force against persons engaged in the practice of exercising their First Amendment Protected rights to free speech and association.

229.    Upon information and belief, Defendant THE CITY OF NEW YORK tacitly condones its police officers' continuing and widespread practice of undertaking extraordinary and unjustified uses of force against person specifically engaged in the practice of exercising their First Amendment Protected rights to free speech and association while participating in or observing assemblies, marches, and events related to Occupy Wall Street.

### B)    ARRESTING INDIVIDUALS SELECTED AT RANDOM DURING PEACEABLE ASSEMBLIES FOR THE PURPOSES OF FRIGHTENING, CONFUSING, AND DETERRING ALL INDIVIDUALS ENGAGED IN PEACEABLE ASSEMBLY

230.    Upon information and belief, Defendant THE CITY OF NEW YORK has implemented a policy pursuant to which individuals are selected at random for arrest from within a group of protestors, in order to create fear in other protestors that they too will be subject to arrest.  One feature of random arrests is that the police arrest certain individuals who are engaging in lawful activity, and who are engaging in no legally significant activity that is different from that of other individuals present at the same time and place.  Upon information and belief, the purpose of this tactic is to deter protestors from engaging in protest.  The tactic is effective because it creates confusion as to what conduct the police consider lawful, and what conduct will subject the individual to arrest.

231.    Upon information and belief, this tactic actually achieves the desired result of deterring other individuals from lawful participation in Occupy-related

activities.  Arresting even a relatively small proportion of those lawfully engaging in a protest is an effective deterrent.  If the NYPD regularly arrested every 100th person entering Macy's, people would very quickly stop going to Macy's.  Months and thousands of arrests after the Occupy Wall Street movement began, these abusive tactics have substantially impacted the size and frequency of OWS events.

232.    Upon information and belief, as early as the third day of the Occupy Wall Street protests, NYPD officers were already observed selecting individual protestors at random from a larger group and targeting those people for arrest.  At a protest on Sept. 19, 2011, journalists reported police penetrating a group of protestors to select a single individual for arrest.  The individual was later falsely reported to have leapt over a barricade by former NYPD spokesman Paul Browne.

233.    Upon information and belief, two days later, one witness reported two random arrests at an Occupy-related protest at the corner of Broadway and Liberty streets on September 21, 2011.

234.    Upon information and belief, a reporter for the *Chronicle of Higher Education* documented the random arrest tactic being employed in the vicinity of Union Square on September 24, 2011: "In the same way that ocean trawlers capture indiscriminately, officers penned hundreds of peacefully marching Occupy Wall Street protesters together with bystanders, pedestrians, reporters, and neighborhood residents. Witnesses called police targeting of detainees 'random.'"  The same reporter wrote: "Many detainees were simply on their way from the nearby farmer's market or the Strand bookstore—or en route to one of the five subway lines intersecting in the area."

235.    Upon information and belief, a reporter for *The New York Times* reported that arrests of Occupy-affiliated protestors in the vicinity of the Brooklyn Bridge on October 1, 2011, one of the same demonstration in which the Defendants herein arrested Plaintiff, appeared to be "random and aggressive."  ABC News similarly reported "random" arrests taking place.  The following day, Mayor Michael R. Bloomberg ratified these tactics stating, "The police did exactly what they were supposed to do."

236.    Upon information and belief, on January 1, 2012, actress Ellen Barkin reported that she witnessed police forcibly arrest a woman near Union Square, who was simply walking in the vicinity of Occupy-affiliated protestors.

237.    Upon information and belief, one journalist described such random arrests occurring at Zuccotti Park on the night of February 28, 2012 in which several Occupy-affiliated citizens present in the park were arrested for no discernable reason, while others, equally innocent, were not.  The journalist recorded the police taunting these people.

238.    Upon information and belief, *The New York Times* reported that protestors engaged in peaceful and lawful protest were being randomly selected for arrest at an Occupy-related protest on March 17, 2012.

239.    Upon information and belief, a New York Times reporter described the police randomly selecting non-violent individuals for arrest at an Occupy-related protest in the financial district that occurred on September 15, 2012.

240.    Upon information and belief, a reporter for *Gothamist.com* also reported random arrests during an Occupy-related march from Washington Square to Zuccotti Park on September 15, 2012, and identified such random arrests as a recognizable tactic

consistently employed by the NYPD at Occupy-related protests: "NYPD officers in white shirts [were] throwing people into the sidewalk, and … police were singling protesters out, seemingly at random, to be arrested. The tactic is a hallmark of the NYPD's policing of Occupy Wall Street demonstrations, both large and small."

241.    Upon information and belief, a journalist for *The Atlantic*, reporting on a protest on September 17, 2012 made the same observation: "At times, police seemed to outnumber protesters, and some arrests during the protest seemed random: An officer would point out an individual in the crowd, and then a group [of officers] would rush in and grab the target."  A journalist who was himself arrested while covering this event reported: "NYPD was randomly grabbing people 3-5 at a time throughout the march."

<u>THE UNCONSTITUTIONAL POLICES AND PRACTICES RESULTED IN PLAINTIFF'S INJURY</u>

242.    The Defendants implemented and applied force in the manner described herein, without individualized probable cause that such force was necessary or justified, and, as result, injured the Plaintiff.

243.    Upon information and belief, the Defendants were implementing the foregoing unlawful custom, practice, and/or policy of targeting participants in Occupy Wall Street activities without cause for arrest, detention, or prosecution on the occasions of their arrests of Plaintiff.

244.    Upon information and belief, the Defendant POLICE OFFICERS were implementing the foregoing unlawful custom, practice, and/or policy of arresting individuals selected at random during peaceable assemblies in the manner described herein, on the occasions of their arrests of Plaintiff.

245.    As a result of Defendants' impermissible conduct, Plaintiff demands

judgment against Defendants in a sum of money to be determined at trial.

## XII.  CLAIMS FOR RELIEF RELATING TO EACH OF DEFENDANTS' INTERACTIONS WITH PLAINTIFF

---

### CLAIM FOR RELIEF XII. A

### *RESPONDEAT SUPERIOR* AGAINST THE DEFENDANT POLICE OFFICERS

246.    Plaintiff repeats, reiterates, and re-alleges each and every allegation

contained in the above paragraphs with the same force and effect as if fully set forth

herein.

247.    The acts complained of were carried out by the aforementioned Defendant

POLICE OFFICERS in their capacities as police officers, officials, and agents of the City

of New York.

248.    As a result, the Defendant THE CITY OF NEW YORK is liable to the

Plaintiff for the injuries and other damages caused by its police officers, officials, and

agents on a theory of *respondeat superior*.

249.    As a result of the foregoing, Plaintiff is entitled to compensatory damages

and punitive damages against the Defendants in amounts to be determined at trial.

### CLAIM FOR RELIEF XII. B

### PUNITIVE DAMAGES AGAINST THE DEFENDANT POLICE OFFICERS

250.    The actions of the Defendant POLICE OFFICERS constituted intentional

violations of federal and state law.

251. The actions of the Defendant POLICE OFFICERS were motivated by evil motive or intent, or involved involves reckless or callous indifference to the constitutionally protected rights of Plaintiff.

252. As a result, Plaintiff is entitled to an award of punitive damages against each of the individual Defendant POLICE OFFICERS in an amount to be determined at trial.

<u>CLAIM FOR RELIEF XIII</u>

253. Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

254. As stated herein, Defendant NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO and Defendant NEW YORK CITY POLICE CHIEF THOMAS PURTELL violated the plaintiff's Constitutional rights on Oct. 1, 2011, as stated herein, and in Claims for Relief I through XII, which are incorporated herein.

255. Defendant NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO and Defendant NEW YORK CITY POLICE CHIEF THOMAS PURTELL, acting as commander, supervisor, or Defendant NEW YORK CITY POLICE OFFICER JOHN DOE 10/01/11 INCIDENT COMMANDER, caused the plaintiff to be arrested on Oct. 1, 2011.

256. Defendant NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO and Defendant NEW YORK CITY POLICE CHIEF THOMAS PURTELL, acting as commander, supervisor, or Defendant NEW YORK CITY POLICE OFFICER JOHN DOE 10/01/11 INCIDENT COMMANDER, failed to prevent the plaintiff's civil

rights from being violated on Oct. 1, 2011, despite having a reasonable opportunity to do so.

257.    Defendant NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO and Defendant NEW YORK CITY POLICE CHIEF THOMAS PURTELL, acting as commander, supervisor, or Defendant NEW YORK CITY POLICE OFFICER JOHN DOE 10/01/11 INCIDENT COMMANDER, are responsible for the violation of the plaintiff's rights by other Defendant Police Officers on Oct. 1, 2011, under the theory of respondeat superior.

258.    Defendant NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO and Defendant NEW YORK CITY POLICE CHIEF THOMAS PURTELL, acting as commander, supervisor, or Defendant NEW YORK CITY POLICE OFFICER JOHN DOE 10/01/11 INCIDENT COMMANDER, acted with policy-making authority on Oct. 1, 2011, in connection with the arrest of the plaintiff and approximately 700 other on that date at the Brooklyn Bridge.

259.    Defendant NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO and Defendant NEW YORK CITY POLICE CHIEF THOMAS PURTELL, acting as commander, supervisor, or Defendant NEW YORK CITY POLICE OFFICER JOHN DOE 11/15/11 INCIDENT COMMANDER, violated the plaintiff's Constitutional rights on Nov. 15, 2011 as stated herein, and in Claims for Relief I through XII, which are incorporated herein.

260.    Defendant NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO and Defendant NEW YORK CITY POLICE CHIEF THOMAS PURTELL, acting as commander, supervisor, or Defendant NEW YORK CITY POLICE OFFICER

JOHN DOE 11/15/11 INCIDENT COMMANDER, caused the plaintiff's property to be confiscated and destroyed on Nov. 15, 2011.

261.    Defendant NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO and Defendant NEW YORK CITY POLICE CHIEF THOMAS PURTELL, acting as commander, supervisor, or Defendant NEW YORK CITY POLICE OFFICER JOHN DOE 11/15/11 INCIDENT COMMANDER acted with policy-making authority on Nov. 15, 2011, in connection with incidents on that date described herein.

262.    Defendant NEW YORK CITY POLICE CHIEF (RETIRED) JOSEPH ESPOSITO and Defendant NEW YORK CITY POLICE CHIEF THOMAS PURTELL, acting as commander, supervisor, or Defendant NEW YORK CITY POLICE OFFICER JOHN DOE 11/15/11 INCIDENT COMMANDER are responsible for the violation of the plaintiff's rights by other Defendant Police Officers on Nov. 15, 2011, under the theory of respondeat superior.

WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction and:

[a] Invoke pendent party and pendent claim jurisdiction.

[b] Award appropriate compensatory and punitive damages.

[c] Empanel a jury.

 [d] Award attorney's fees and costs.

[e] Award such other and further relief as the Court deems to be in the interest of justice.

DATED:     New York, New York
           September 30, 2014


                              Respectfully submitted,

                              DAVID A. THOMPSON [DT 3991]
                              STECKLOW COHEN & THOMPSON
                              217 Centre St. Fl. 6
                              New York, New York 10013
                              [212] 566-8000
                              [212] 202-4952/FAX
                              Dthompson@WYLIELAW.COM
                              ATTORNEYS FOR PLAINTIFF