DAVID A. THOMPSON
STECKLOW COHEN & THOMPSON

217 CENTRE STREET, 6TH FLOOR
NEW YORK, NEW YORK 10013
TEL:   (212) 566-8000
FAX:   (212) 202-4952
DTHOMPSON@WYLIELAW.COM

Nov. 23, 2014

**BY ECF**
Honorable Judge Jesse M. Furman
United States District Judge
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

Re: *Laugier v. City of New York*, 13-cv-06171 (JMF)

Dear Honorable Judge Furman:

I write in relation to my letter motion of November 14, 2014. I am aware that the Court's order of November 16th directs that the motion for spoliation sanctions discussed in that letter be filed on December 8th. However, a new fact has come to light which I believe I must bring to the Court's attention immediately.

To state the issue briefly, I have learned that the defendants violated the Court's October 31, 2014 order directing the defendants to turn over "a copy of video taken by TARU Officer McDonald." (See Ex. A). The defendants turned over video by TARU Officer McDonald, but **before producing it, the defendants removed the part of the video that depicts the arrest of the plaintiff**. By accident, I came upon an intact copy of the video, and by comparing the two, I learned that what the defendants produced in this case was incomplete.

The video produced by the defendants consists of five video files on a disc. Exhibit B is an image of the front of the disc. The disc came with a cover letter, signed by Joy Anakhu, Esq. The cover letter states: "Per the Court's order on October 31, 2014, attached please find video taken by Det. McDonald on November 17, 2014." (See Ex. C). Ms. Anakhu is supervised on this case by Dara Weiss, Esq. The disc produced by the defendants contains five viewable video files, with the filenames VTS_01_n.VOB, where n is a number from 1 to 5. (See Ex. D). The first video, VTS_01_1, begins with Det. McDonald stating the date and time of Nov. 17, 2011 at 7:08 AM. The last video in the sequence, VTS_01_5, appears to terminate at approximately 9:30, with film of some arrests being made at the intersection of William St. and Pine St.

The other, more complete copy of the McDonald video was found on my law firm's document server, where it was apparently placed by another attorney handling a criminal matter. While I do not handle criminal cases, my two law partners handled numerous Occupy Wall Street-related criminal proceedings. The location where I found this video indicates that it was turned over by the District Attorney's office in relation to one of these cases. It is not possible to determine which case it was. I found the material by accident while searching the server for something else on November 18, 2014.

1

The video found on my firm's document server consists of four viewable videos, VTS_01_n.VOB, where n is a number from 1 to 4. (See Ex. E). The fourth of these videos contains the footage that shows the plaintiff's arrest. At approximately 3:33 minutes into this fourth video, the videographer identifies himself as Det. McDonald. The server VTS_01_4 video "Server VTS_01_4") begins at the same location as the City-produced VTS_01_5 (City VTS_01_5"), at the intersection of William St. and Pine St. Server VTS_01_4 appears to begin shortly after the end of City VTS_01_5. Server VTS_01_4 shows some additional events at William and Pine Streets, and then the scene shifts to William St. and Exchange Place (3:33 - 3:43), and then to the location of the plaintiff's arrest at William St. and Beaver St. (3:44 - 10:40). In other words, Server VTS_01_4 contains approximately seven (7) minutes of video of the scene of the plaintiff's arrest that was not included in the video produced by the defendants.

When the defendants arrested the plaintiff on November 17, 2011, the police alleged that the plaintiff committed disorderly conduct by "standing in the street," and that defendant Sergeant David Strom "asked defendant to move from the street numerous times and defendant did not do so." (See Ex. E). The seven minutes of video withheld by the defendants clearly shows the plaintiff voluntarily exiting the street, going onto the sidewalk, and being arrested on the sidewalk. The video shows that the defendants' account of what happened is **false**.

Ex. G is a still image from Server VTS_01_4 that shows the street sign indicating the location being filmed was the location of the plaintiff's arrest. Except where noted, all images annexed to this letter as exhibits are stills captured from Server VTS_01_4. In Exhibit H, the plaintiff can be clearly seen. While it is difficult to tell from this image, in the context of the entire video it is clear that the plaintiff is already on the sidewalk. Exhibit I shows the plaintiff walking away from the street and in the direction of the building line. Exhibit J shows the plaintiff a significant distance from the curb, on the sidewalk. Exhibit K shows the plaintiff walking away from the intersection, on the sidewalk, attempting to leave the area. Exhibit L shows the violent arrest of another protestor, also on the sidewalk. In the context of the full video, it is clear that this protestor, like the plaintiff, did nothing wrong. Exhibit M shows a commotion on the sidewalk as the plaintiff is being arrested. Exhibit N shows a citizen videographer filming the plaintiff's arrest. Exhibit O is a still from the video shot by that videographer, showing the plaintiff being arrested directly in front of him, on the sidewalk. Exhibit P (returning to Server VTS_01_4) shows a police officer sitting on the plaintiff's head.[1] At approximately this point in the video, police officers can be heard saying, "Get her in the street!" Exhibit Q shows an officer holding the plaintiff's leg in the air, as he and another officer carried the plaintiff into the street to continue the arrest. Exhibit R is a still from a video by the network RT, showing the police carrying the plaintiff from the sidewalk, past a parked car, to drop her in the street. Exhibit S (returning to Server VTS_01_4) shows the plaintiff's arrest being continued in the street.

The video withheld by the defendants directly refutes the purported basis for the arrest, that the plaintiff refused to leave the street. In addition, the video shows the use of unnecessary violence by the police. The fact that the withheld video refutes the defendants' case raises an inference that the video was withheld intentionally. Further supporting this inference is the fact that the existence of **any** video shot by Det. McDonald was not disclosed until the undersigned, reviewing other TARU video of the same event, was able to capture a screen image showing the

---

[1] At approximately 6:45 in Server VTS_01_4, a bystander can be heard commenting: "He was kneeling on her head pretty hard."

2

name of Det. McDonald on his police jacket. (See screen capture from other TARU video, Ex. U). Had I not reviewed the video with such care, the plaintiff would have remained completely unaware that this video existed.

To better inform the Court as to the issues involved, I am annexing a portion of a deposition of John Giuffre, which was conducted in the case *Wiles v. City of New York*, 13-cv-2898 (VSB). (Ex. V). Mr. Giuffre is a staff member of TARU who testified as a 30(b)(6) witness concerning the manner in which TARU video, once created by a TARU officer such as Det. McDonald, is stored and retrieved for civil litigation or criminal proceedings. To summarize the testimony, TARU officers copy the video they shoot onto discs, which are labeled and then given to Mr. Giuffre. Officers copy all video that they shoot, and they do not edit video. Mr. Giuffre keeps the video on file. Requests for copies are made in writing through the NYPD Legal Bureau, or sometimes, when the DA requests video, by subpoena. TARU's "job tracker" system acts as a catalogue of the videos that have been created, copied, and stored. Another TARU officer who testified in the same case stated that (in the context of requests for copies of ARGUS video) requests for copies of video are also noted in the job tracker system.

The plaintiff respectfully requests that the Court issue remedial orders, pending the Court's later consideration of the plaintiff's formal motion for sanctions, including the following: 1) an order directing the defendants to turn over all video of any kind shot on the dates of the incidents in this case (October 1, 2011, November 15, 2011, and November 17, 2011) regardless of whether the defendants deem the video relevant, and **without editing** the video produced, 2) an order directing the defendants to produce all TARU job tracker entries for the same dates; 3) an order directing the defendants to turn over all documentation relating to requests for copies of video created on the same dates, and 4) granting the plaintiff leave to reopen depositions already taken, as necessary in light of the video Server VTS_01_4 or any other relevant video that is produced as a result of the defendants' compliance with items 1 through 3.

The plaintiff will, as directed by the Court's Order of November 16th, file a formal motion for sanctions on December 8, 2014. In relation to that motion, the plaintiff respectfully requests that the Court modify the briefing schedule because of pre-existing vacation plans of undersigned counsel. The Court has currently set the following schedule: "Plaintiff shall file any motion for spoliation sanctions no later than December 8, 2014; any opposition shall be filed by December 22, 2014; any reply shall be filed by January 5, 2015." (See Docket Entry 56). The undersigned will be out of the country from December 17, 2014 until January 7, 2015. The undersigned would greatly appreciate a modification of the briefing schedule, especially in light of the fact that this motion for sanctions -- unfortunately -- raises many serious issues that should be addressed by someone familiar with them. I believe I am the only attorney in my office sufficiently familiar with the case and these issues to be able to reply effectively to the defendants' opposition. The current schedule allows 14 days for the plaintiff's reply. I respectfully suggest that the plaintiff be allowed to submit a reply 14 days from January 8th, on January 22nd.

The two sets of Det. McDonald video, the City-produced video and the Server video, are being provided to the Court on a USB drive, that will be hand-delivered, with an identical copy being provided to the defendants, on Nov. 24, 2014.

Respectfully submitted,

David A. Thomson, Esq.

3